IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

DANA REYNA, individually and as mother )
and next friend of K.M.R., a minor, )
  )
      Plaintiffs, )
  )
vs. )   Case No.  CIV-09-1223-D
  )
INDEPENDENT SCHOOL DISTRICT )   (District Court of Oklahoma County,
NUMBER 1 OF OKLAHOMA COUNTY, )   Oklahoma, Case No. CJ-2009-9583)
OKLAHOMA, commonly referred to as )
PUTNAM CITY SCHOOLS, *et al.* )
  )
      Defendants. )

# O R D E R

Before the Court is the Individual School Defendants' Motion for Summary Judgment [Doc.

No. 50], filed by Defendants Paul Hurst, Melanie Mouse, Jennifer DeSouza, Hallie Wright, Paula

Smitherman, Tina Nunn, Roslyn Patrick, Frances Blickenstaff, Diane Barnard, and Kelli Hau.

Plaintiffs have timely opposed the Motion, and Defendants have replied.  The movants are school

employees sued in their individual capacities under 42 U.S.C. § 1983 for alleged violations of the

civil rights of the minor plaintiff, K.M.R., while a student at Kenneth Cooper Middle School.  Other

named defendants have also moved for summary judgment, but the Court first addresses the instant

Motion because the § 1983 claims at issue provide the sole basis for federal jurisdiction.[1]  For

reasons that follow, the Court grants summary judgment on all remaining § 1983 claims and declines

---

[1]  The Court has previously dismissed Plaintiffs' § 1983 claims against Defendant Independent
School District No. 1, all claims against Kenneth Cooper Middle School, and Plaintiffs' tort claims against
the individual school employees.  *See* Order of May 21, 2010 [Doc. No. 20].  Plaintiffs assert pendant state
law claims against the school district under the Governmental Tort Claims Act, Okla. Stat. tit. 51, §§ 151-172,
and against Defendants Sheila Alderson and Child Defendant #1.  Plaintiffs have voluntarily dismissed
Defendant Tiffany Hutchinson.  Other minor defendants listed in Plaintiffs' pleading and designated only by
numbers, have not been identified or served with process.

to exercise supplemental jurisdiction over Plaintiffs' state law claims, which will be remanded to state court.[2]

### Factual and Procedural Background

Plaintiff Dana Reyna is the mother of K.M.R., who was allegedly a victim of bullying at Kenneth Cooper Middle School. The moving defendants are the school superintendent, an assistant superintendent, the principal, an assistant principal, a counselor, a nurse, and four teachers. Plaintiffs allege that eight students bullied K.M.R. at school and at non-school events by subjecting her to taunting, threats, battery, vandalism, and other acts of bullying, which caused K.M.R. to suffer depression and severe migraine headaches. Plaintiffs claim that the named school employees failed in various ways to assist K.M.R. and her mother in efforts to stop the bullying. Also, three teachers and the nurse allegedly denied K.M.R. timely access to medication for migraine headaches, a condition to which she was susceptible due to a prior illness, despite two letters from treating physicians. Ms. Reyna alleges she was forced to quit a job to care for K.M.R., and Plaintiffs allegedly were forced to abandon their home and move to a rental house in another school district so that K.M.R. could attend a different school.

Based on the allegations of Plaintiffs' pleading, as clarified by arguments in their briefs, Plaintiffs assert § 1983 claims for damages against the movants under the following legal theories: (1) the teachers and nurse who deprived K.M.R. of necessary medication violated a duty to provide care that existed under the "special relationship" doctrine; (2) various school personnel failed to protect K.M.R. from the bullies, which was a duty that existed under the "state created danger" doctrine; and (3) school management failed to adequately supervise and train the personnel who

---

[2] Defendants removed the action to federal court based on the assertion of § 1983 claims in Plaintiffs' state court petition and, therefore, the existence of federal subject matter jurisdiction under 28 U.S.C. § 1331.

violated K.M.R.'s constitutional rights to care and protection. *See* Petition [Doc. No. 1-2], ¶¶ 72-77; Pls' Resp. Br. [Doc. No. 60] at 10-11. By their Motion, the school employees assert that Plaintiffs cannot establish a violation of K.M.R.'s constitutional rights by any school employee or establish liability of any managers, and cannot overcome the defense of qualified immunity.

## Standard of Decision

Summary judgment is proper "if the movant shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id.* at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id.* If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, then all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but may consider other materials in the record." *See* Fed. R. Civ. P. 56(c)(3); *see also Adler*, 144 F.3d at 672. The Court's inquiry is whether the

facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### Undisputed Facts [3]

K.M.R. was a student at Kenneth Cooper Middle School during the 2007-08 and 2008-09 school years, covering her enrollment in the sixth and seventh grades. Plaintiffs state that K.M.R. was absent due to illness during sixth grade, and after she returned in January, 2008, K.M.R. was ridiculed and threatened by other students. Plaintiffs also state that in late January, 2008, a psychotherapist diagnosed K.M.R. with severe depression and recommended that she be removed from school. Ms. Reyna obtained homebound status for K.M.R. until March 7, 2008. K.M.R. then attended a private school for the remainder of the school year.

K.M.R. returned to Kenneth Cooper Middle School for seventh grade. At the beginning of the school year, Ms. Reyna gave the school nurse, Diane Barnard, ibuprofen to administer to K.M.R. as needed for headaches; on December 1, 2008, Ms. Reyna provided Aleve to be administered instead of ibuprofen. School rules prohibited K.M.R. from carrying medication to school and self-administering it. Ms. Barnard administered ibuprofen and Aleve to K.M.R. during the school year as shown by medication logs. Plaintiffs claim that Ms. Barnard denied K.M.R.'s request for medication on November 12, 2008, because she was busy with other duties, and that she delayed giving Aleve to K.M.R. several times in order to consult Ms. Reyna, according to the instructions Ms. Reyna had given about administering Aleve. Plaintiffs also claim that one teacher, Francis Blickenstaff, required K.M.R. to wait on several occasions when she asked to leave class to take her

---

[3] This statement includes material facts presented by both parties that are supported as required by Fed. R. Civ. P. 56(c)(1). If a party has asserted a fact, or asserted that a fact is disputed, but has failed to provide such support, the assertion is disregarded. All facts are stated in the light most favorable to Plaintiff.

medication and that another teacher, Roslyn Patrick, refused K.M.R.'s request to take her medication

on one occasion. Ms. Reyna informed the principal, Jennifer DeSouza, in November, 2008, about

K.M.R.'s problem regarding timely access to her medication and Ms. DeSouza resolved the

problem, although Plaintiffs allege the resolution took eight or nine weeks.[4]

During K.M.R.'s seventh grade year, Ms. Reyna first reported to a school counselor, Paula

Smitherman, in September, 2008, that some girls were calling K.M.R. names. In December, 2008,

Ms. Reyna informed Ms. Smitherman of two bullying incidents that K.M.R. had experienced – one

in which K.M.R.'s keys were placed in a toilet and her lunch card was cut up, and another in which

her books were thrown in the trash. One of K.M.R.'s teachers, Kelli Hau, had seen K.M.R.

retrieving her keys from the toilet. Ms. Reyna provided the names of students that K.M.R. believed

were involved in these incidents, based on information K.M.R. had obtained from another student.

After the school break, additional bullying incidents occurred outside of school hours during

non-school events. K.M.R. and other students were invited to the home of a classmate (H.A.) in

January, 2009, but K.M.R. was then locked outside in freezing temperatures. K.M.R. and other

students were invited to the home of another classmate (L.B.) in February, 2009, but K.M.R. was

then insulted and taunted until Ms. Reyna came to get her. During spring break in March, 2009, a

group of students, including H.A. and L.B., toilet-papered and vandalized K.M.R.'s house.

Ms. Reyna subsequently learned of postings by some of the students on MySpace.com about the

---

[4] In support of this allegation, Plaintiffs cite deposition testimony of Ms. Reyna that, read in context, suggests this estimated period of delay includes time that elapsed before Ms. DeSouza was informed of a problem. Ms. Reyna testified that she sent Ms. DeSouza an email in November, 2008, asking for help in resolving the problem of K.M.R.'s access to medication. According to Ms. Reyna, she told Ms. DeSouza, "'You need to do something right away,' and she did. But it had been eight or nine weeks before she did anything about it." *See* Reyna Dep. [Doc. No. 50-1], 97:5-12 (emphasis added). Ms. Reyna also testified that once Ms. DeSouza helped resolve the medication issue, K.M.R.'s behavioral issues at school improved to the point that she earned a reward before the December school break. *See id*. 178:6-20.

March incident and about K.M.R.  All of these incidents were first brought to the attention of Ms. Smitherman in March, 2009.  Ms. Smitherman determined that the MySpace.com postings did not contain threats and, in her opinion, did not constitute cyberbullying.

In April, 2009, an incident occurred at school in which K.M.R. received an anonymous note. Ms. Reyna provided the note to Ms. Smitherman and identified L.B. as the student whom K.M.R believed was responsible.  Ms. Smitherman questioned L.B. and discussed the matter with her.  L.B. admitted writing the note, and agreed not to do it again.  Ms. Smitherman hoped this discussion would resolve the problem.  Subsequently, in mid-April, Plaintiffs reported to an assistant principal, Hallie Wright, that L.B. had tripped K.M.R. in the gym while students were running.[5]  K.M.R. fell and bruised her knee.  Ms. Wright investigated the incident by talking to students who were present and reviewing a video recording of the gym to try to determine what had occurred.  L.B. denied K.M.R.'s accusation; the other students could not say what happened; and the video did not show the incident.  L.B. was not disciplined because Ms. Wright could not confirm K.M.R.'s report that L.B. had intentionally tripped her.  On April 21, 2009, K.M.R.'s teaching team met with Ms. Reyna to discuss various concerns, including K.M.R.'s behavior, discipline, and grades, and the alleged bullying.  Ms. Reyna was advised that K.M.R must report any incidents to a teacher, Ms Wright, or Ms. Smitherman.

At the end of April, 2009, Ms. Reyna reported to Ms. Smitherman that L.B. and H.A. were writing on their arms and bodies, as well as the arms, hands or bodies of other students, letters that signified a hate-club against K.M.R.  Ms. Smitherman asked the students to wash off the markings, and she placed phone calls to parents of some students, particularly L.B. (who had previously

---

[5] Ms. Wright had prevoiusly assisted Plaintiffs with behavioral problems K.M.R. was experiencing in late 2008.  Ms. Wright had rewarded K.M.R. for improving her behavior by allowing her to be "principal for a day" and be Ms. Wright's assistant.

written the note).  Despite several messages, Ms. Smitherman was unsuccessful in reaching L.B.'s parents.  On April 30, 2009, Ms. Reyna sent Ms. Wright an email message stating that she had learned of another incident that occurred while K.M.R. was absent from school that week.  Ms. Reyna reported that the same two students (L.B. and H.A.) had written the hate-club letters on their stomachs, that L.B. had been seen by a teacher showing the writing on her stomach to another other student, and that the teacher had sent L.B. to the nurse to wash off the writing.  Ms. Wright responded to the message the same day and informed Ms. Reyna that the incident had been addressed.  Ms. Wright issued a detention, and she and Mrs. Smitherman counseled the students involved, consistent with the school's policy of progressive discipline.  Ms. Reyna was not satisfied with this resolution; she believed that students who had bullied K.M.R. should be suspended from school activities such as cheerleading.

On April 30, 2009, Ms. Reyna also sent a letter to the school superintendent, Paul Hurst, outlining her complaints about what K.M.R. had experienced during the school year.  Mr. Hurst did not personally respond to the letter.  Ms. Reyna then sent a copy of the letter to an assistant superintendent, Melani Mouse, who responded by calling Ms. Reyna and speaking with her by telephone.  Ms. Reyna and Ms. Mouse discussed K.M.R.'s options for the remainder of the school year, such as enrolling in a night program.  Ms. Mouse stated that she would help Ms. Reyna, but then she did not follow through with arrangements for an alternative placement.  Ms. Reyna did not request assistance from the principal, Ms. DeSouza, with the bullying issue.  Instead, Ms. Reyna removed K.M.R. from school shortly after the hate-club incident.[6]

---

[6]  K.M.R. returned to school briefly following the incident on about May 1, 2009, but learned from other students that one of the bullies sent out a mass text message that day when K.M.R. boarded the school bus saying something to the effect, "K.M.R. is back in school.  Watch out."  See Reyna Dep. [Doc. No. 60-14], 157:16-22.

During this time, K.M.R. was depressed and, at one point, reported suicidal thoughts.[7] She considered taking an overdose of her anti-depressant medication; she also used a razor to cut her arms, but not as a suicide attempt. A counselor diagnosed K.M.R. with acute stress disorder, panic attacks, depressive disorder, and impulse-control disorder. Ms. Reyna quit a job in March, 2009, due to K.M.R.'s health issues and other problems, although she did not know the severity of the bullying issue at the time. Ms. Reyna rented a house in another school district in June, 2009, and lived there the following school year.

### Discussion

The legal theories on which Plaintiffs rely to establish a violation of K.M.R.'s constitutional rights are based on doctrines discussed in *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189 (1989), arising under the Due Process Clause. Specifically, an individual's right ro substantive due process may entitle the individual to governmental protection from third parties or to governmental aid in limited circumstances. An affirmative duty to provide care and protection has been recognized with respect to persons taken into state custody, such as incarcerated prisoners and involuntarily committed mental patients. In this situation, the duty arises from "the State's affirmative act of restraining the individual's freedom to act on his own behalf." *See id*. at 200. A duty may also arise where the state plays a part in creating a danger and rendering an individual vulnerable to harm. *See id*. at 201. In this case, Plaintiffs seem to contend that both doctrines are applicable and imposed on school employees an affirmative duty to assist K.M.R.[8]

---

[7] According to Plaintiff's counselor, K.M.R. first disclosed suicidal thoughts in September, 2009. *See* Baumann Letter [Doc. No. 60-17] at 2.

[8] Plaintiffs do not respond to the part of the Motion seeking summary judgment on behalf of school officials who are alleged to be liable based on a failure to train or supervise subordinate employees. However, a supervisor's liability depends, at a minimum, on the existence of a constitutional violation by the subordinate. *See Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010).

A.      **Special Relationship**

Plaintiffs contend K.M.R. was entitled to assistance with accessing her medications under the "special relationship" doctrine. They argue that K.M.R. was prevented from accessing the medications by school policies that prohibited self-administration by K.M.R. and required her to obtain them from the school nurse. When K.M.R.'s teachers or the school nurse blocked her access to the medications, Plaintiffs argue, they limited K.M.R.'s ability to care for herself to the extent that they assumed a special relationship with K.M.R. and had an affirmative duty to assist her in accessing the medications. The Court is not persuaded by this argument.

Although the special relationship doctrine is not limited to custodial prisoners and mental patients, "[t]his doctrine applies 'when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual.'" *J.W. v. Utah*, 647 F.3d 1006, 1011 (10th Cir. 2011) (quoting *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995)). Accordingly, the doctrine has been extended to impose an affirmative duty to protect foster children taken into state custody and placed in foster care. *See id.*; *see also Yvonne L. v. New Mexico Dep't of Human Servs.*, 959 F.2d 883, 892-93 (10th Cir. 1992).[9] Plaintiffs fail to provide any legal authority, however, for the proposition that middle school children attending public school enjoy a special relationship with their teachers or other school employees. The Court is aware of no such authority. Instead, federal appellate courts addressing the issue have found no special relationship between school officials and students, even elementary school children, entrusted to their care. *See*, *e.g.*, *Maldonado v. Josey*, 975 F.2d 727, 733 (10th Cir. 1992) ("the state does not confine school children in the same way that it confines prisoners, the institutionalized, or children in foster homes"); *see*

_____

[9] The court of appeals expressly noted in *J.W.* that this theory is limited to foster children who are in state custody. *See J.W.*, 647 F.3d at 1011 n.2.

*also Lee v. Pine Bluff Sch. Dist.*, 472 F.3d 1026, 1030-31 (8th Cir. 2007) (middle school student on school trip); *Armijo ex rel. Chavez v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1261 (10th Cir. 1998) (special education student attending public school).

Therefore, the Court finds that Plaintiffs have failed to demonstrate a triable issue with respect to any claim of § 1983 liability based on the "special relationship" doctrine.

**B.      Danger Creation**

Plaintiffs assert that K.M.R. was entitled to protection from bullies under the "state created danger" doctrine.  The court of appeals has explained the "danger creation" theory as follows:

> In general, state actors may only be held liable under § 1983 for their own acts, not the acts of third parties.  The "danger creation" exception to this rule applies only when a state actor affirmatively acts to create, or increases a plaintiff's vulnerability to, or danger from private violence.  To state a prima facie case, the plaintiff must show that (1) state actors created the danger or increased the plaintiff's vulnerability to the danger in some way, (2) the plaintiff was a member of a limited and specifically definable group, (3) the defendants' conduct put the plaintiff at substantial risk of serious, immediate, and proximate harm, (4) the risk was obvious or known, (5) the defendants acted recklessly in conscious disregard of that risk, and (6) the conduct, when viewed in total, shocks the conscience.

*Robbins v. Oklahoma,* 519 F.3d 1242, 1251 (10th Cir. 2008) (internal quotations and citations omitted); *accord Rost v. Steamboat Springs RE-2 School Dist.*, 511 F.3d 1114, 1126 (10th Cir. 2008).  In essence, "[t]he danger creation doctrine makes a state official liable for the private violence of third parties if that official created the danger that caused the harm and the official's conduct was conscience shocking." *Moore v. Guthrie*, 438 F.3d 1036, 1042 (10th Cir. 2006); *see also Uhlrig v. Harder*, 64 F.3d 567, 576 (10th Cir. 1995) (the theory requires conduct "so egregious, outrageous and fraught with unreasonable risk as to shock the conscience").

Upon consideration, the Court finds that Plaintiffs have failed to present sufficient facts to prevail under the "danger creation" theory.  Plaintiffs do not expressly address this theory of

recovery in their brief or explain its applicability under the circumstances. However, the facts shown by the summary judgment record do not support a *prima facie* case under *Robbins* and *Rost*. The facts do not suggest school employees acted in a way that created a danger of bullying to K.M.R. or increased her vulnerability to bullying, nor do the facts establish that any employee consciously disregarded a substantial risk of serious harm to K.M.R. Further, Plaintiffs have failed to present properly-supported facts to establish conduct by school employees that would satisfy the conscience-shocking standard established by existing case law. At most, Plaintiffs have put forth facts suggesting that some school employees may have been negligent in not more appropriately addressing K.M.R.'s medical needs or her mother's complaints of bullying. However, "negligent government conduct is insufficient to prove liability under § 1983." *Rost*, 511 F.3d at 1126. Accordingly, the Court finds that Plaintiffs have failed to demonstrate a genuine dispute of material facts with regard to any § 1983 claim based on the "danger creation" theory of liability.

## C.     Deliberate Indifference to Known Threat

In response to Defendant's Motion, Plaintiffs contend that school officials from whom Ms. Reyna requested assistance with bullying may be liable under § 1983 for deliberate indifference to K.M.R.'s emotional distress, citing *Sutton v. Utah State School for the Deaf and Blind*, 173 F.3d 1226 (10th Cir. 1999). In *Sutton*, the court of appeals held that the plaintiff in that case, the mother of a severely disabled child who was sexually abused by another student, stated a § 1983 claim against a school principal under a "danger creation" theory, based on the principal's failure to adopt a protective policy and his inadequate training of school employees "so as to enhance the danger of sexual assault to [the victim]." *See id.* at 1238. The court relied on factual allegations that the principal was personally informed by the mother that her child – who had severe cerebral palsy and the mental age of a three to five-year-old child, was totally blind, and could not speak – had

communicated to her that he had been sexually molested several times in the school bathroom by a much larger student. The court found that the plaintiff's pleading contained sufficient factual allegations from which a conclusion could be drawn that the principal acted with deliberate indifference to the risk of repeated abuse and, in light of the child's severe impairments, the principal's personal notification of the danger, and his failure to take any action to prevent further molestation of the child, "a viable claim that would 'shock the conscience of federal judges' was stated." *Id*. at 1241.[10] The court of appeals further found that the plaintiff's allegations were sufficient to establish the principal's duty to protect the child "from the violence committed by private actors under the 'danger-creation' doctrine." *Id*.[11]

The Court is unpersuaded that this case presents analogous facts. To be sure, viewing the record in the light most favorable to Plaintiffs, as required by Rule 56, the facts portray a disturbing situation in which a group of bullies tormented a physically and emotionally fragile adolescent and subjected her repeatedly to ridicule and demeaning treatment. Ms. Reyna, quite understandably, pressed school officials in an effort to protect her daughter from such a situation. Clearly, school officials who were aware of some incidents described by K.M.R., or who were subsequently informed by her mother, might have done more to assist her. However, as stated above, the Court

---

[10]   The court was assessing the sufficiency of the plaintiff's pleading under the now-abrogated standard of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). *See Sutton*, 173 F.3d at 1239, 1241.

[11]   The Court notes that the court of appeals recently discussed *Sutton* in a slip opinion and there suggested that, despite statements in *Sutton* regarding the principal's liability resting on a danger-creation theory, the real holding of *Sutton* was that the plaintiff's pleading stated a viable claim under a supervisory liability theory. *See Gray v. University of Colo. Hosp. Auth.*, No. 10-1446, 2012 WL 604164, *7 n.7 (10th Cir. Feb. 27, 2012) (to be published). Viewed in this way, *Sutton* also does not assist Plaintiffs because this theory of liability would require an underlying constitutional violation by a subordinate state actor, which has not been established in this case. *See id.*

finds insufficient facts from which to establish liability under the "danger creation" theory. Analysis of *Sutton* and subsequent case law explaining its rationale does not alter this conclusion.

## D.    Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When claimed by a defendant, a court must undertake a two-part inquiry:

> First, a court must decide whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.

*Id*. at 232 (citations omitted); *see Saucier v. Katz*, 533 U.S. 194, 201 (2001). "To be clearly established, the contours of a right must be 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). "[T]here need not be precise factual correspondence between earlier cases and the case at hand, because 'general statements of the law are not inherently incapable of giving fair and clear warning . . . .'" *Id*. at 913-14 (quoting *Hope*, 536 U.S. at 741). To show that a legal right is clearly established, a plaintiff may demonstrate the same "by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." *Id*. at 914; *see Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007) (en banc).

In this case, the school employees have timely raised the defense of qualified immunity, and they seek summary judgment based on a lack of legal authority that would have required them to provide medical care or protection for K.M.R. under the circumstances presented. In response,

Plaintiffs have failed to demonstrate any clearly established federal law governing the school employees' conduct.  Plaintiffs cite no federal case law from which reasonable officials in the school employees' situation would have understood that their conduct violated a constitutional right of K.M.R.  Plaintiffs rely exclusively on *Sutton* as providing clear notice to the individual defendants of the unconstitutionality of their conduct.  For the reasons previously stated, however, the Court finds that *Sutton* does not support Plaintiffs' position.  Therefore, the school employees are also entitled to summary judgment on the basis of qualified immunity.

## Conclusion

For the reasons set forth herein, the Court finds that Plaintiffs have failed to make a sufficient showing on essential elements of their § 1983 claims against the individual school employees, and have failed to overcome the defense of qualified immunity.  Thus, these defendants are entitle to a judgment as a matter of law on Plaintiffs' § 1983 claims.  Because the Court has disposed of all claims over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining claims.  *See* 28 U.S.C. § 1367(c)(3).[12]

IT IS THEREFORE ORDERED that the Individual School Defendants' Motion for Summary Judgment [Doc. No. 50] is GRANTED.  Summary judgment is granted in favor of the moving defendants on Plaintiffs' claims asserted under 42 U.S.C. § 1983.[13]

IT IS FURTHER ORDERED that all remaining state law claims asserted against Defendants Independent School District No. 1 of Oklahoma County, Sheila Alderson and Child Defendant #1,

---

[12]  "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."  *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (internal quotation omitted).

[13]  As previously noted, Plaintiffs' § 1983 claim against the school district was dismissed by Order of May 21, 2010.  *See supra* note 1.

are remanded to the District Court of Oklahoma County, Oklahoma.  For clarity of the record, a separate judgment and order of remand will be entered.

IT SO ORDERED this 27th day of March, 2012.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE